**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

NICOLE FOCO,

        Plaintiff,                      Case No.

v.                                                        Hon.

FREUDENBERG – NOK GENERAL PARTNERSHIP
and VIBRACOUSTIC NORTH AMERICA,

        Defendants.

_____

ANGELA L. WALKER (P67625)
NACHT, ROUMEL, SALVATORE,
BLANCHARD & WALKER, P.C.
Attorney for Plaintiff
101 N. Main Street, Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
awalker@nachtlaw.com
_____

**COMPLAINT AND JURY DEMAND**

      NOW COMES Plaintiff, NICOLE FOCO, by and through her attorneys, NACHT, ROUMEL, SALVATORE, BLANCHARD & WALKER, P.C., and hereby complains of Defendants, FREUDENBERG NOK – GENERAL PARTNERSHIP and VIBRACOUSTIC NORTH AMERICA, as follows:

**PARTIES AND JURISDICTION**

      1.    Plaintiff Nicole Foco ("Plaintiff" or "Ms. Foco") is a resident of Canton, Michigan in the County of Wayne.

      2.    Defendant Freudenberg – NOK General Partnership ("FNGP") is an employer whose U.S. headquarters is located in Plymouth, Michigan in the County of Wayne.

3.      At all relevant time, Defendant Vibracoustic North America ("VNA") was a division of Freudenberg – NOK General Partnership.

4.      Defendants are hereinafter collectively referred to as "Defendants" or "the company."

5.      This lawsuit includes claims for sex discrimination under Title VII of the Civil Rights Act of 1964, the Elliott-Larsen Civil Rights Act, and the Equal Pay Act of 1963.

6.      On March 31, 2011, the Equal Employment Opportunity Commission issued a right-to-sue letter to Plaintiff.

7.      This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. § 1331 and over state claims pursuant to 28 U.S.C. § 1367.

8.      Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391, as it is the district where the Plaintiff lives, Defendant conducts business, and the events giving rise to Plaintiff's claims took place.

## GENERAL ALLEGATIONS

9.      Ms. Foco is a 28-year-old female.

10.     Ms. Foco graduated with honors with a Bachelors of Science in Plastics Engineering Technology from Ferris State University in May, 2004.

11.     Ms. Foco was first hired as an intern at FNGP in the summer of 2002.

12.     FNGP is an auto parts manufacturer based in Plymouth, Michigan.

13.     Following her internship, Ms. Foco worked for FNGP on a part-time basis while she finished college.

14.     In July of 2004, Ms. Foco was hired to work full-time as a Test Engineer for Virbacoustic North America ("VNA") – a division of FNGP.

15. Ms. Foco's starting salary was $42,000/year.

16. As a Test Engineer, Ms. Foco was responsible for performing component-level testing of rubber-to-metal bonded automotive parts.

17. Ms. Foco soon emerged as a top performer within her group.

18. In January of 2007, Ms. Foco was promoted to the position of Applications Engineer for micro-cellular urethane ("MCU") products for Japanese accounts.

19. At the time of Ms. Foco's promotion, there were no other female Applications Engineers at VNA.

20. As an Applications Engineer, Ms. Foco worked closely with Account Managers and Product Development Engineers to market MCU products to Japanese accounts. She performed market research, developed product timelines, and participated in meetings with customers.

21. This was a significant increase in responsibility from her prior role as a Test Engineer.

22. Nevertheless, at the time of her promotion, Ms. Foco did not receive an increase in pay to compensate for her increased job duties. Nor did she receive any bonus structure, car allowance, or cell phone allowance, or pay grade increase as all other Applications Engineers were receiving.

23. At the time of her promotion, Ms. Foco was earning approximately $47,000 per year.

24. Upon information and belief, at least three of Ms. Foco's male counterparts with the same job title earned $67,000/year or more.

25. From January 2007 through June 2007, Ms. Foco made several verbal requests to her manager, Jens Lange, to properly adjust her salary for the job promotion she was given. Ms. Foco also requested a car allowance, a cell phone allowance, a pay grade increase, and a bonus (all of which were being provided to other Applications Engineers).

26. In June 2007, Ms. Foco received a 6% salary adjustment which brought her yearly salary to $49,000. She did not receive any other adjustments to her compensation.

27. Even after the pay increase, Ms. Foco was still earning significantly less than male coworkers who were performing substantially equal work. Also, she was still missing out on perks that were being provided to male coworkers, such as a car allowance, cell phone allowance, and bonus opportunities.

28. In August of 2007, Ms. Foco communicated that she was dissatisfied with the disparities in her compensation and she was prepared to leave her position.

29. In response, her manager offered her a car allowance of $525/month, a cell phone allowance of $50/month, and 10% of base bonus awarded one time per year.

30. Still, no attempt was made to adjust her base compensation or to adjust her pay grade level, and Ms. Foco continued to earn significantly less than male coworkers who were performing substantially equal work for the company.

31. In January of 2008, Ms. Foco received a sales award for 2007 performance.

32. In February of 2008, one of the Account Managers left the company, and Ms. Foco assumed two of his accounts to manage while also completing her regular duties as Applications Engineer.

33. At FNGP, the Account Manager role is considered a higher-level position than the Applications Engineer position, and Account Managers are compensated at a higher level than Applications Engineers.

34. Even though Ms. Foco began taking on Account Manager responsibilities in February 2008, she did not receive any adjustments to her compensation.

35. In March of 2008, Ms. Foco received her first performance review as an Applications Engineer. She received the highest possible rating ("exceeds expectations").

36. In September of 2008, Jens Lange left the company and Ms. Foco began reporting to a new manager, Tom Ramm.

37. After Mr. Lange left, Ms. Foco took on his accounts as an Acting Account Manager.

38. In October of 2008, Ms. Foco received a base pay adjustment of 7% ($53,000/year).

39. Despite this increase in pay, Ms. Foco was still earning significantly less than male coworkers who were performing substantially equal work for the company.

40. By January of 2009, Ms. Foco's job had changed to the extent that she no longer had any Applications Engineer responsibilities. Even though her title had not changed, she was functioning as an Account Manager, with all the duties of an Account Manager.

41. In this role, Ms. Foco assisted in planning, presented sales at sales meetings, was the face to the customer for Vibracoustic products, and reported to the Sales Director – the exact same duties that were being performed by the other Account Managers.

42. All of the individuals who held the Account Manager at VNA title were male.

43. Ms. Foco was the only employee performing Account Manager duties who was not officially classified as an Account Manager at VNA.

44. Ms. Foco was also the lowest paid employee performing Account Manager duties.

45. In March of 2009, Ms. Foco made a written request to Tom Ramm (Manager) and Antje Sickenberger (Human Resources) to receive the proper title, pay, and benefits for the job functions she was doing. Ms. Foco also requested a proper cell phone allowance for an account manager per company standard.

46. At the time of this request, Ms. Foco put the company on notice that she believed there was a gender disparity in pay between herself and her male coworkers.

47. Ms. Foco requested information regarding the grade level and salary ranges of Applications Engineers and Account Managers at FNGP, along with any market data used to determine the salary ranges. In addition to this, Ms. Foco specifically requested comparison data between male and female employees with the same job titles.

48. The company did not provide Ms. Foco with the information she requested.

49. In May of 2009, Ms. Foco received a 6% increase in her base pay. She did not receive any other adjustments to her compensation. Moreover, she did not receive any information as to how her raise was calculated.

50. Even after the pay increase, Ms. Foco was still earning significantly less than male coworkers who were performing substantially equal work. Also, she was still missing out on perks that were being provided to male coworkers, such as a car allowance, a cell phone allowance, and bonus opportunities.

51. In June of 2009 through January of 2010, Ms. Foco made verbal requests to Tom Ramm for the proper title change, pay and benefits that other employees were receiving doing

the same job functions. No attempt was made to give these to her. During one of the requests, Tom Ramm threatened Ms. Foco by stating, "You're lucky to have a job."

52.  From June 2009 through February 2010, Ms. Foco was given additional accounts to manage.

53.  By March of 2010, Ms. Foco was still earning significantly less than male coworkers who were performing substantially equal work for the company.

54.  Dissatisfied with the company's refusal to provide her with equal pay, Ms. Foco made the decision to leave her employment with VNA.

55.  Ms. Foco's decision to leave VNA was also influenced by derogatory conduct she was exposed to based on her gender, including but not limited to the following:

  a. On numerous occasions, the company president, Mehdi Ilkhani-Pour, spoke down to Ms. Foco by making such requests as asking her to get him coffee, asking her to plan birthday parties, and other similar requests (he never made such requests of male employees at her same level in the organization);

  b. On numerous occasions, the company president, Mehdi Ilkhani-Pour sent Ms. Foco to deliver messages to his assistant during business meetings (he never asked similarly situated male employees to leave the room to deliver messages); and

  c. Ms. Foco's supervisor, Tom Ramm, told her that she reminded him of a playboy playmate he had seen in a movie.

56.  On or about April 7, 2010, Ms. Foco accepted a job offer from Dichtomatik Americas and gave notice that she was leaving to VNA.

57.  Ms. Foco's last day of work was on Friday, April 30, 2010.

58. Ms. Foco's official job title was still "Applications Engineer" at the conclusion of her employment.

59. After Ms. Foco left, her position was posted internally as "Account Manager."

60. In September of 2010, a male was hired to assume Ms. Foco's former position.

61. On information and belief, the male employee who replaced her received the job title of "Account Manager."

## COUNT I:  SEX DISCRIMINATION
### (Title VII and the Elliott-Larsen Civil Rights Act)

62. Plaintiff hereby realleges and incorporates by reference paragraphs 1-61 above.

63. Plaintiff is a female.

64. Plaintiff was qualified for her positions with Defendants.

65. Defendants subjected Plaintiff to adverse employment actions based on her sex, including but not limited to:

   a. Plaintiff was treated differently than similarly-situated male peers throughout her employment;

   b. Plaintiff was paid lower wages than similarly-situated male peers; and

   c. Plaintiff was constructively discharged based on her sex.

66. Plaintiff was replaced by a male employee after she was constructively discharged.

67. As a result, Plaintiff was harmed and continues to be harmed, in that she has suffered economic loss, damage to her professional reputation, and emotional distress.

## COUNT II:  VIOLATION OF THE EQUAL PAY ACT

68. Plaintiff hereby realleges and incorporates by reference paragraphs 1-67 above.

69. Plaintiff is a female.

70. Plaintiff was qualified for her positions with Defendants.

71. Throughout her employment, Defendants paid Plaintiff lower wages than male employees who performed substantially equal work.

72. The wage disparity cannot be justified by a factor other than sex.

73. Defendants continued to pay Plaintiff lower wages than male employees who performed substantially equal work even after Plaintiff put Defendants on notice that there was a gender-based pay disparity.

74. Defendants have willfully violated of the Equal Pay Act.

75. As a result, Plaintiff was harmed and continues to be harmed, in that she has suffered economic loss, damage to her professional reputation, and emotional distress.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff Nicole Foco respectfully requests that this Court award Plaintiff damages in an amount to be determined at trial for the damages to Plaintiff's professional and personal reputation and emotional distress, for Plaintiff's economic loss, and for costs, interest, attorney's fees, statutory penalties, and any other relief that this Honorable Court deems just and proper.

Respectfully submitted,
NACHT, ROUMEL, SALVATORE,
BLANCHARD & WALKER, P.C.

Dated: April 4, 2011

s/Angela L. Walker
Angela L. Walker (P67625)
Attorney for Plaintiff
101 N. Main Street, Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
awalker@nachtlaw.com

## **DEMAND FOR JURY TRIAL**

NOW COMES Plaintiff, NICOLE FOCO, by and through her attorney, NACHT, ROUMEL, SALVATORE, BLANCHARD & WALKER, P.C., and hereby demands a jury trial in the above-captioned matter.

Dated: April 4, 2011　　　　　　　　　　　　s/Angela L. Walker
　　　　　　　　　　　　　　　　　　　　　Angela L. Walker (P67625)
　　　　　　　　　　　　　　　　　　　　　Attorney for Plaintiff
　　　　　　　　　　　　　　　　　　　　　101 N. Main Street, Ste. 555
　　　　　　　　　　　　　　　　　　　　　Ann Arbor, MI 48104
　　　　　　　　　　　　　　　　　　　　　(734) 663-7550
　　　　　　　　　　　　　　　　　　　　　awalker@nachtlaw.com