UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLE FOCO,

    Plaintiff,                             Case No. 11-CV-11415
                                       HON. GEORGE CARAM STEEH

vs.

FREUDENBERG-NOK GENERAL
PARTNERSHIP and VIBRACOUSTIC
NORTH AMERICA,

    Defendants.
_____/

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [#21]

I.    Introduction

Plaintiff filed the instant action on April 4, 2011, raising claims of wage discrimination under the Equal Pay Act, 29 U.S.C. § 206(d)(1) ("EPA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and Michigan's Elliot-Larsen Civil Rights Act, MICH. COMP. LAWS § 37.2101 *et seq.* ("ELCRA").

Presently before the court is defendants' motion for summary judgment. After plaintiff filed a response in opposition to defendants' pending motion for summary judgment, she filed a supplemental response to defendants' motion for summary judgment on April 26, 2012, or three business days prior to the scheduled May 1, 2012 hearing. The following day, defendants filed a motion to strike plaintiff's supplemental response, or in the alternative, to permit defendants to file a reply to plaintiff's supplemental response. *See* Dkt. No. 47. At the hearing on this matter, the court denied defendants' motion to strike

-1-

plaintiff's supplemental response and permitted defendant to file a reply to plaintiff's supplemental response.  For the reasons that follow, defendants' motion for summary judgment is GRANTED.

II.     Factual Background

Freudenberg-NOK General Partnership (FNGP) is a leading producer of advanced sealing technology for the automotive industry.  Vibracoustic North America (VNA) was a division of FNGP from 2000 to 2010 before becoming a corporate subsidiary of FNGP in April of 2010.

During the summers of 2002 and 2003, plaintiff was a student intern in FNGP's technology department testing rubber samples.  After she graduated from Ferris State University with a degree in Plastics Engineering Technology, she was offered a position as a Test Engineer at FNGP's Plymouth, Michigan office. On July 1, 2004, plaintiff began employment as a Test Engineer, grade level 6, supervised by Sinan Lacin.  Before this job, plaintiff had never held a salaried position, having prior work as a fitness instructor and in a "summer gig" at a car dealership.  Plaintiff's starting salary was $42,000.00.  Between 2002 and 2004, FNGP hired four males with similar experience holding the same degree as plaintiff and all received a starting salary of $42,000.00.  As a Test Engineer, plaintiff's core job duties were to test components and report test results.  On July 1, 2005, plaintiff received a 2% salary increase from $42,000.00 to $42,840.00.  On April 1, 2006, she received a 10% pay increase to $47,124.00.

On January 1, 2007, plaintiff was promoted to Applications Engineer. An Applications Engineer works with the Account Manager to provide technical support and information to customers.  Upon receiving this promotion, plaintiff did not receive any

increase in her salary. Defendants maintain that "[i]n the industry at large and within FNGP, it is common to give an employee a new title without a corresponding pay increase until the employee demonstrates his or her ability to successfully perform the job." Therefore, FNGP management decided to see how plaintiff performed in the new position before giving her a pay increase, cell phone and car allowance. Plaintiff asserts that all other Applications Engineers at FNGP, who were all male, had a car and cell phone allowance, and were eligible for bonuses. Further, plaintiff claims that she was not paid on the pay scale for the Applications Engineer position. Specifically, plaintiff argues that she should have been classified at a Grade 8 as an Applications Engineer, but she remained classified as a Grade 6 upon her promotion to this position. However, defendants argue that FNGP jobs do not have set pay grades and the document relied on by plaintiff was prepared by plaintiff's former supervisor, Jens Lange, who had no authority to assign pay grades.

Sometime in January of 2007, plaintiff approached Lange concerning her salary. Lange offered to review her compensation. At his deposition, Lange testified:

> Q. –and complained about it? Do you recall what her pay was when she first complained about her pay?
> A. 44,000, plus or minus.
> Q. And –
> A. Around 44,000.
> Q. Did you think that was too low?
> A. I can only say that it was approximately half of what some other application engineers made so either some other engineers made twice as much money as they should, or Nicole made 50 cents to the dollar, something was off.

See Plf.'s Resp., Ex. D at 50. Mr. Lange also testified about a meeting he had with Michelle Tomaszek, Director of FNGP's Human Resources:

> A. That was Michell Tomaszek, yeah, who helped me to go through this whole, through this whole process. And I would almost say that Michelle was concerned at that time about what she saw in the numbers for Nicole. Obviously she never had reason to look into that before, but now it was on the table and she looked into it and said, that's no fit.
> They actually told me at that time that they looked into the salary level and grade levels of all application engineers at Freudenberg-NOK, so that American Freudenberg branch. And not only found that Nicole is on the wrong pay level, but she is also at the rock bottom of salary, rock, rock bottom. And they took me aside and says, She's the only application engineer that doesn't have Flex Drive allowances, basically car allowance.

Id. at 54-55. Mr. Lange testified that Ms. Tomaszek told him that he needed to "fix this" because "otherwise you would open the door for a harassment case by basically denying the employee certain things that other application engineers within Vibracoustic and company wide received as a standard package. And the fact that Nicole is a female makes it even worse now that just does not look right." Id. at 92.

Thereafter, plaintiff was given a 6% pay increase from $47,124.00 to $49,951.00 and was promoted to grade level 7. She also received a 2007 bonus, a retroactive car allowance and cell phone reimbursement. Mr. Lange testified that the 6% raise was too low to remedy the disparity.

> A. [S]o bumping up a salary that's 50 cents to the dollar by six percent is not closing the gap much. And at that time, once I fully understood what was going on, I said, Okay, we can't fix this in one go-around, this will be something that will take two, maybe three years[.]
> If you do this over three years, well, you basically have to close the gap every year by 10 to 15 percent to make her catch up. And then after three years she would still not have been at the same level than some other application engineers, and then you can argue and say, Okay, now there is a little bit more seniority, a little bit more experience, and that's why he's making 15 or 20 percent more. That's all fine. But because of all that and the simple math in going backwards, I felt that six percent was not, was not getting us where

> we needed to be, and it would just make my way in the future even harder, what I believed at that time, unnecessary.

Id. at 52-53.

Throughout 2007 and 2008, plaintiff worked as an Applications Engineer. The other Applications Engineers in the same group with her included Paul Fernandez, Kip Yoder and Joe Lak. Lange served as their direct supervisor until his departure in September of 2008. Mr. Lange testified that all Applications Engineers who reported to him performed the same job functions; "same job responsibilities, just different clients."

Mr. Lange also testified that plaintiff performed her job duties at a higher level than her male counterparts. He described plaintiff's performance compared with Joe Lak as "night and day," and that Lak's performance was "significantly substandard." Despite plaintiff's outstanding job performance compared with her male colleagues, they earned significantly higher salaries than plaintiff. Mr. Lak and Mr. Yoder earned $88,320.00 and $88,500.00 respectively.

Defendants maintain that FNGP began to feel the effects of the failing economy in 2008 and 2009. FNGP imposed a freeze on salary increases and hiring in 2008. In 2009, FNGP imposed 7% to 15% cuts in employee salaries. However, during this period plaintiff received higher percentage increases than any male Application Engineer or Account Manager. From January 2008 through April of 2010, plaintiff's salary rose by 14%. Specifically, on October 1, 2008, plaintiff received a 7% increase from $49,951.00 to $53,447.00.

On March 23, 2009, plaintiff sent an email to Tom Ramm and Human Resources requesting a "salary review" and a pay increase to $65,000.00 and an increase to her cell

phone allowance. Antje Sickenberger, on behalf of Human Resources, conducted an analysis of internal and external market data to review plaintiff's salary. On April 6, 2009, Sickenberger recommended a 7% increase to $57,188.00 or a 10% increase to $58,792.00. That same day, Illkhani-Pour approved a 7% increase and recommended that plaintiff be considered for the Performance Award Unit program, which provides certain employees with units that, after three years of continued employment, vest and hold a dollar value.

Plaintiff requested a promotion to Account Manager. Ilkani-Pour and Ramm did not believe that plaintiff had sufficient experience to lead major accounts or manage high level customer relationships and told her so. To provide plaintiff with experience and training, Ramm assigned her several small and dormant accounts, with low level contacts. Plaintiff maintains that defendants acknowledge that her eventual career path led to an Account Manager position. Plaintiff claims that as of January 2009, she was operating full-time as an Account Manager and no longer served as an Applications Engineer. Defendants told plaintiff to change her email signature to state that she was an Account Manager, even though they refused to change her official title. A company document shows that plaintiff was to be transferred to 100% sales effective March 1, 2009.

Plaintiff served as an Account Manager from January 1, 2009 through April 30, 2010. During this time period, she reported to Ramm. Also during this time period, Gary Perkins, John Prince, and Bilal Bazzi were serving as Account Managers for VNA reporting to Ramm. All three male Account Managers earned substantially higher salaries than the plaintiff. Both Prince and Perkins were earning more than $110,000.00. Bazzi earned $79,000.00 at the beginning of 2010.

In early 2010, plaintiff was selected to participate in FNGP's elite mentorship program. In April of that same year, plaintiff took another job at Dichomatick earning $67,000.00 plus bonus a year. FNGP maintains that plaintiff's job duties were distributed among numerous co-workers and that she was not replaced. Contrary to plaintiff's claim, she was not replaced by Dean Biondi, who was specifically hired by FNGP to work on a new Fiat/Chrysler opportunity because of his unique contacts with several decisionmakers at Chrysler and his relevant experience.

### III.    Law & Analysis

#### A.    Equal Pay Act

The Equal Pay Act prohibits a covered employer from discriminating[1]

> [b]etween employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex[.]

29 U.S.C. § 206(d)(1). To establish a prima facie case under the Equal Pay Act, plaintiff must show that the defendant paid higher wages to employees of the opposite sex "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Corning Glass Works* v. *Brennan*, 417 U.S. 188, 195 (1974).

---

[1] Because the court concludes that summary judgment in favor of defendants is warranted on all of plaintiff's claims, defendants' first argument – that all of plaintiff's claims against VNA must be dismissed because she was employed by FNGP, and not VNA, a division of FNGP – is moot.

"Equal work 'does not require that the jobs be identical,' but only that there exist 'substantial equality of skill, effort, responsibility and working conditions.'" *Thomas v. Owen Electric Cooperative, Inc.*, 121 Fed. Appx. 598, 603 (6th Cir. 2005)(citing *Odomes v. Nucare, Inc.*, 653 F. 2d 246, 250 (6th Cir. 1981)). "[E]xperience and training are relevant to the determination of 'skill' in suits under the Equal Pay Act." *Id.* Specifically, the Code of Federal Regulations states in relevant part:

> Where the amount or degree of skill required to perform one job is substantially greater than that required to perform another job, the equal pay standard cannot apply even though the jobs may be equal in all other respects. Skill includes consideration of factors as experience, training, education and ability. It must be measured in terms of the performance requirements of the job. If an employee must have essentially the same skill in order to perform either of two jobs, the jobs will qualify under the EPA as jobs the performance of which requires equal skill, even though the employee in one of the jobs may not exercise the required skill as frequently or during as much of his or her working time as the employee in the other job. Possession of a skill not needed to meet the requirements of the job cannot be considered in making a determination regarding equality of skill. The efficiency of the employee's performance in the job is not in itself an appropriate factor to consider in evaluating skill.

29 C.F.R. § 1620.15(a). "Responsibility according to the federal regulations, is concerned with the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation." *Thomas*, 121 Fed. Appx. at 604 (citing 29 C.F.R. § 1620.17(a)).

If the plaintiff succeeds in establishing a *prima facie* case, the defendant must show that the difference in pay is justified under one of the four affirmative defenses set forth in the Act. *Corning Glass Works,* 417 U.S. at 196-97. "In order to be entitled to summary judgment, the defendant must prove that there is no genuine issue as to whether the difference in pay is due to a factor other than sex." *Balmer v. HCA, Inc.* 423 F. 3d 606, 612

(6th Cir. 2005). As to the fourth affirmative defense, or the EPA's "catch-all" provision, such a defense "does not include literally *any* other factor, but a factor that, at a minimum, was adopted for a legitimate business reason." *Id.* (emphasis in original). "A wage differential based on education or experience is a factor other than sex for purposes of the Equal Pay Act." *Id.* Additionally, consideration of a new hire's previous salary is permitted "so long as the employer does not rely solely on prior salary to justify a pay disparity." *Id.*

Plaintiff's EPA claim fails as a matter of law because plaintiff cannot establish her *prima facie* case. Under the EPA, plaintiff must provide specific evidence of her actual duties to establish she was performing the same job as her male comparators. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974). As to plaintiff's argument that she was functioning as an Account Manager as of January 2009, she fails to offer sufficient evidence on this point to establish that a question of fact exists.

Defendants have presented evidence that plaintiff's position did not require substantially similar skill or responsibility to that of her male counterparts–John Prince, Gary Perkins, and Bilal Bazzi. Account Managers' core duties were to generate sales, manage commercial issues, and build relationships with high level decision-makers such as Directors or Vice-Presidents. For example, Prince was the Global Key Account Manager for Ford Motor Company, an account worth over $20,000,000.00 for defendants. In this capacity, Prince was responsible for leading sales activities, handling commercial issues, developing relationships and negotiating with high level decision-makers at all of Ford's operations world-wide. Perkins was responsible for the $10,000,000.00 General Motors account. Bazzi was responsible for more than five Japanese automotive customer accounts including the $10,000,000.00 Honda account. Prince, Perkins, and Bazzi's

positions required advanced relationship-building, negotiation skills, cultural knowledge and high-stakes sales pitches.

In contrast, the evidence presented shows that plaintiff was responsible for application engineering and had limited responsibility for performing primarily maintenance duties on small inactive domestic accounts that were of small value to the company with little growth potential. Her primary duties included collecting outstanding bills and altering product designs to increase sales. She also dealt with low-level customer contacts such as buyers who had little decision-making authority. Furthermore, plaintiff was not responsible for the commercial profitability of her accounts, whereas her male counterparts were responsible for commercial profitability. She also had no supervisory responsibility, whereas the Account Manager position could require supervision of Applications Engineers, such as Prince, who directly supervised Senior Applications Engineer Bob Michniewicz. Thus, Prince, Perkins, and Bazzi's positions required more skill, experience and responsibility than did plaintiff's position at FNGP.

Plaintiff maintains that defendants are incorrect in asserting that she was not performing the Account Manager job as of January 2009, thus her position was substantially equal to the higher paid, male Account Managers. However, plaintiff fails to provide the court with evidence that her accounts required the same level of responsibility as Prince's, Perkins's and Bazzi's accounts. While plaintiff relies on the conclusory statement in Bazzi's affidavit that "we were performing essentially the same job[,]" Bazzi offered no testimony that he observed plaintiff perform her duties. Therefore, plaintiff cannot rely on Bazzi's statement to create a question of fact as to whether she was performing equal work to other male Account Managers.

Furthermore, experience and training are relevant to assessing "skill" under the EPA. *Thomas*, 121 Fed. Appx. at 603; 29 C.F.R. § 1620.15(a) ("Skill includes consideration of factors as experience, training, education and ability.") Prince has a Mechanical Engineering degree,[2] had over twenty seven (27) years of experience, which includes fifteen (15) years as an Application Engineer, eight (8) years as an Account Manager, and four (4) years as the Global Ford Account Manager when plaintiff became an Application Engineer in 2007. Prince had also negotiated a contract with Freudenberg Europe which impacted his compensation when he moved to VNA.

Perkins also holds a Mechanical Engineering degree, had twenty five (25) years of experience, including eleven (11) years of FNGP experience in senior level management positions such as Vice President of Engineering, as well as fourteen (14) years of pre-FNGP sales experience. Bazzi had a Masters and a Bachelors degree in Mechanical Engineering. He had over two years of experience as a Sales Engineer before starting as an Account Manager. He also negotiated a 14% sale increase in 2007 because he received a competing offer and threatened to leave FNGP.

Additionally, plaintiff cannot establish that she performed equal work to other Applications Engineers. The fact that plaintiff shared the same job title with other male applications engineers is insufficient. She must demonstrate what her specific job duties were and show her male counterparts' duties were equal to hers. *See Conti v. Universal Enterprises, Inc.*, 50 Fed. Appx. 690, 697 (6th Cir. 2002). Defendants argue that plaintiff's

---

[2] Ilkhani-Pour and Hawkins testified that an engineering technology degree such as plaintiff's degree is considered less valuable than a mechanical engineering degree by the market and at FNGP and was a factor in setting plaintiff's compensation.

failure to depose any of the male comparators is fatal to her claim because she cannot show their actual job duties nor the skill required for their roles. Plaintiff's comparators worked on different accounts requiring different effort and time.

Furthermore, the Application Engineer comparators had years of experience in this position at FNGP or at a competitor. Lak had a Masters and Bachelors degrees in Engineering and twenty-five (25) years of experience, with thirteen of those years working at FNGP as of 2007. Fernandez had the same degree as the plaintiff but had eight (8) years of relevant experience before joining FNGP, and had four (4) years of experience at FNGP by 2007 when he began working as an Application Engineer. Yoder had a Mechanical Engineering degree and fifteen (15) years of prior relevant experience, including eleven (11) as an Application Engineer and experience as an Account Manager. Bob Michniewicz had twenty two (22) years of experience, including twelve (12) years as an Account Manager prior to FNGP. Thus, no question of fact exists as to whether plaintiff performed equal work to that of her male counterparts. *Corning Glass Works*, 417 U.S. at 195; *Thomas,* 121 Fed. App'x. at 603; 29 C.F.R. § 1620.15(a) ("Skill includes consideration of factors as experience, training, education and ability.")

Even if plaintiff could establish a prima facie case, she fails to provide any evidence demonstrating that a question of fact exists as to whether the "difference in pay is due to a factor other than sex." *Balmer*, 423 F.3d at 612. As described above, the pay differential between plaintiff and her male comparators was based on experience, education, expertise, prior salary, negotiations, market value, and the need to attract particularly well-qualified candidates–all legitimate non-gender factors. *See Balmer v. HCA, Inc.* 423 F. 3d 606, 612 (6th Cir. 2005). Plaintiff's EPA claim is dismissed.

B. Title VII

Plaintiff also asserts that defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq. and Michigan's Elliott-Larsen Civil Rights Act by paying her less than similarly-situated males and constructively discharging her from employment. Similar to her EPA claim, plaintiff cannot meet her *prima facie* burden under Title VII or the ELCRA, therefore these claims are also dismissed.

Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to . . . [her] . . . . sex." 42 U.S.C. § 2000e-2(a)(1). Michigan's ELCRA also prohibits employers from discriminating against any individual on the basis of gender. *See* MICH. COMP. LAWS § 37.2102 *et seq.* Plaintiff may establish gender discrimination by either presenting circumstantial or direct evidence. *See Geiger v. Tower Auto*, 579 F. 3d 614, 622 (6th Cir. 2009); *see also, Harrison v. Olde Financial Corp.*, 225 Mich. App. 601, 610; 572 N.W. 2d 679 (1997).[3]

Where there is only circumstantial evidence, a plaintiff must use the *McDonnell Douglas* burden shifting analysis to establish a *prima facie* case of discrimination by showing: (1) that she belongs to a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified for the job; and (4) she was treated differently from similarly situated employees from a non-protected class or replaced by a person not a member of her protected class. *McDonnell Douglas v. Green, 411 U.S. 792 (1973)*; *Talley v. Bravo Pitino Restaurant*, 61 F.3d 1241, 1246 (6th Cir. 1995); *Wilcoxon v.*

---

[3] Claims brought under Title VII and Michigan's ELCRA are analyzed according to the same elements and framework. *See Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004).

*Minnesota Mining & Mfg. Co.*, 235 Mich. App. 347, 361 (1991); *see also, LaPointe v. United Autoworkers Local 600*, 8 F. 3d 376, 379 (6th Cir. 1993) (*LaPointe I*).[4]

If plaintiff proves a *prima facie* case, the burden of persuasion shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment decision. *McDonnell Douglas*, 411 U.S. at 802. Even though the burden of going forward is on the defendant once a plaintiff has established a *prima facie* case, the ultimate burden of persuasion never shifts from the plaintiff. *Id.* Once the employer carries this burden, the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *Id.*; *Ang v. Proctor & Gamble Co.*, 932 F. 2d 540, 548 (6th Cir. 1991). The plaintiff can meet this burden by showing: 1) that the stated reasons had no basis in fact; 2) that the stated reasons were not the actual reasons; or 3) that the stated reasons were insufficient to explain the employer's action. *Wheeler v. McKinley Enters.*, 937 F.2d 1158, 1162 (6th Cir. 1991). The burden of persuasion always, remains, however, with the plaintiff. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

Here, plaintiff's claims must be dismissed because she cannot demonstrate an adverse action. An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Constructive discharge only exists

---

[4] The burden shifting approach developed for Title VII cases in *McDonnell Douglas* is also applicable to Michigan's ELCRA. *See Allen v. Comprehensive Health,* 222 Mich. App. 426, 429; 564 N.W. 2d 914 (1997).

where conditions are intolerable to a reasonable person. *Henry v. Lennox Indus., Inc.*, 768 F. 2d 746, 752 (6th Cir. 1985).

Here, plaintiff complained about her salary in March of 2009, yet stayed at FNGP for more than a year before leaving for another position at Dichomatick. This rebuts any inference that she felt compelled to resign. *See Coffey v. Chattanooga-Hamilton*, No. 98-6230, 1999 U.S. App. LEXIS 25187, *11 (6th Cir. Oct. 6, 1999). A constructive discharge claim also requires an inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct on the employee. *Henry*, 768 F.2d at 752. Plaintiff has no evidence that FNGP intended for her to leave, rather FNGP provided her with regular pay increases and selected her for the elite mentorship program.

Additionally, plaintiff has not presented sufficient evidence showing a question of fact exists as to whether FNGP treated similarly situated male employees more favorably than plaintiff. "Similarly situated" means that "all relevant aspects" of plaintiff's employment situation must be "nearly identical" to those of her comparator's situations. *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992) (to qualify as "similarly situated," "plaintiff and the comparables must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.") As discussed in regard to her EPA claim, plaintiff has failed to identify a male employee who is similarly situated because the other Applications Engineers and Account Managers had different experience levels, supervisors, degrees, starting salaries and past pay decisions. Further, the evidence presented shows that

plaintiff's starting salary was the same as males who graduated from Ferris State with an engineering technology degree.

Lastly, because defendants have presented evidence – and plaintiff has failed to come forward with facts demonstrating a question of fact exists – that the difference in pay was due to non-gender factors such as experience and education, defendants are entitled to summary judgment on plaintiff's Title VII and ELCRA claims. "A Title VII claim of wage discrimination parallels that of an EPA violation insofar as it incorporates the EPA's affirmative defenses." *Beck-Wilson v. Principi*, 441 F.3d 353, 369 (6th Cir. 2006). "An employer may therefore avoid liability under a Title VII wage discrimination claim if it can establish one or more of the four affirmative defenses in the EPA." *Id.* Here, the pay differential between plaintiff and her male comparators was based on experience, education, expertise, prior salary, negotiations, market value, and the need to attract particularly well-qualified candidates–all legitimate non-gender factors under the EPA. *See Balmer v. HCA, Inc.* 423 F.3d at 612. Defendants are entitled to summary judgment on plaintiff's Title VII and ELCRA claims.

IV.  Conclusion

Accordingly,

Defendants' motion for summary judgment is GRANTED.

This cause of action is dismissed.

SO ORDERED.

Dated:  August 31, 2012

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 31, 2012, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk