**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: November 25, 2013

Mr. Edward A. Macey
Mr. David A. Nacht
Ms. Angela L. Walker
Law Offices
101 N. Main Street, Suite 555
Ann Arbor, MI 48104

Ms. Megan P. Norris
Mr. Richard W. Warren Jr.
Miller Canfield
150 W. Jefferson Avenue, Suite 2500
Detroit, MI 48226

Ms. Susan L.P. Starr
U.S. Equal Employment Opportunity Commission
Office of General Counsel
131 M Street, N.E.
Washington, DC 20507

    Re:   Case No. 12-2174, *Nicole Foco v. Freudenberg-NOK General Partnership, et al*
           Originating Case No. : 2:11-cv-11415

Dear Counsel:

  The Court issued the enclosed Opinion today in this case.

                              Sincerely yours,

                                s/Robin L. Johnson
                                Case Manager
                                Direct Dial No. 513-564-7039

cc:  Mr. David J. Weaver

Enclosure

Mandate to issue

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a1003n.06

No. 12-2174

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Nov 25, 2013
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| NICOLE FOCO, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) ON APPEAL FROM THE UNITED |
| v. | ) STATES DISTRICT COURT FOR THE |
| | ) EASTERN DISTRICT OF MICHIGAN |
| FREUDENBERG-NOK GENERAL | ) |
| PARTNERSHIP, VIBRACOUSTIC | ) |
| NORTH AMERICA, | ) |
| | ) |
| Defendants-Appellees. | ) |

BEFORE: BOGGS and McKEAGUE, Circuit Judges; and BECKWITH, Senior District Judge.[*]

BECKWITH, Senior District Judge. Plaintiff-Appellant Nicole Foco sued her former employers, Defendant-Appellees Freudenberg-NOK General Partnership ("FNGP") and Vibracoustic North America,[1] for wage discrimination under the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d)(1), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws Ann. § 37.2101 *et seq*. Finding that

---

[*]The Honorable Sandra S. Beckwith, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

[1]Vibracoustic North America was a division of FNGP during the relevant times in this case but has since become a separate corporate entity. Because the change in corporate status has no effect on the outcome of the case, for ease of reference we refer to the Defendants collectively as "FNGP."

1

Plaintiff failed to establish a prima facie case of wage discrimination and, in any event, that FNGP proved that the pay differential between Plaintiff and her male comparators was based on a factor other than sex, the district court granted FNGP's motion for summary judgment on Plaintiff's claims.[2] Plaintiff now appeals from the district court's judgment. We affirm, however, for the reasons that follow.

I.

FNGP is an auto-parts manufacturer located in Plymouth, Michigan. FNGP first employed Plaintiff as an intern while she was an engineering student at Ferris State University. Plaintiff graduated from Ferris State in 2004 with a degree in plastics engineering technology. FNGP hired Plaintiff directly from Ferris State as a test engineer at a starting salary of $42,000. FNGP hired four other new male engineering graduates at the same time at the same salary. The test-engineer position appears to have been a pure "engineering" position in that Plaintiff was involved in testing materials and did not have any contact or interface with FNGP's customers.

In January 2007, Plaintiff was promoted to the position of applications engineer. The applications engineer is a sales-related position. An applications engineer does not have any direct sales development or profitability responsibilities but rather serves as a technical liaison between the customer and the component engineers of FNGP.

The account-manager position is essentially the sales or business development position within FNGP. According to the record, the account manager is supposed to interface with customers at the highest levels of the company and work to develop and secure multi-million dollar accounts

---

[2]Plaintiff also alleged that FNGP constructively discharged her because of her gender. The district court also granted summary judgment to FNGP on this claim, but Plaintiff has abandoned it on appeal.

for FNGP. There is a dispute in the record whether FNGP ever actually promoted Plaintiff to an account-manager position. Plaintiff claims that she was promoted to account manager in 2009. FNGP says that it recognized that Plaintiff had the potential to become an account manager but did not feel she had sufficient experience in sales to allow her to develop large clients, such as Ford Motor Company. FNGP contends that it allowed Plaintiff to acquire account-manager experience by giving her several small, mostly inactive accounts to manage. FNGP also claims that it allowed Plaintiff to refer to herself as an account manager to clients for appearance purposes but that she remained an applications engineer even while handling these accounts.

In any event, due to statute-of-limitations problems, Plaintiff's equal-pay claims relate to the period from 2008 during her tenure as an applications engineer through the period when she claims she was an account manager. Plaintiff alleged that she was vastly underpaid compared to her male counterparts for performing substantially the same work.

Plaintiff claimed that during her time as an applications engineer, she was paid substantially less than the other three men in her group. Plaintiff's direct supervisor, Jens Lange, testified that Plaintiff performed the same job and that she was performing at a higher level than the male application engineers. The three male application engineers performing the same duties as Plaintiff were Paul Fernandez, Joe Lak, and Kip Yoder.

Fernandez obtained a Bachelor's degree in Mechanical Engineering and Technology from the University of Dayton in 1995. He was hired by FNGP in 2003, and had about nine years of relevant work experience in his field. Fernandez's salary is not indicated in the record but he was classified as a Grade 10 employee and had obtained numerous awards in his field.

3

Lak was hired by FNGP in September 1994, and was classified as a Grade 11 employee. He had a bachelor's degree in mechanical engineering and a master's degree in plastics engineering from the University of Lowell. Lak had thirteen years of experience at FNGP and twenty-five years of experience in his field. Lak received recognition for his work on several occasions. During the time in question, Lak was making $88,320.

Yoder was hired by FNGP in September of 2007. He was classified as a Grade 11 employee. He received a Bachelor's degree in mechanical engineering from the University of Toledo in 1992. Yoder had about fifteen years of experience in his field. When FNGP hired Yoder, he negotiated a specific salary that, when compared to all other candidates, matched the market value for his skills. Yoder was making $88,500.

Working as an applications engineer, the highest salary Plaintiff ever earned was $53,447. Plaintiff asked her manager for a pay increase in early 2007. Lange suggested a plan where Plaintiff would receive a 6-7% merit increase over two years. Plaintiff received a 6% pay increase from $47,124 to $49,951 in June 2007. She was also promoted to Grade Level 7.

Plaintiff also claimed that during her time as an account manager, she was not appropriately classified in terms of salary, and that as a result she was paid far less than her male counterparts, specifically, Gary Perkins, John Prince, and Bilal Bazzi.

FNGP hired Perkins in March 1996 as an account manager. He earned a bachelor's degree in mechanical engineering from Tri-State University in 1978, and an MBA from Eastern Michigan University in 2010. Perkins had 30 years of applicable work experience as an engineer. He had also received numerous awards and recognition for his work. At the time of his hire, Perkins was identified as a candidate the company wanted to attract, and as a result made more than $110,000.

4

FNGP hired Prince in August of 2007, and he was classified as a Grade 13 employee. He obtained a bachelor's degree in mechanical and production engineering from Demontfort University in 1982. Prince had roughly 31 years of relevant experience. Prince negotiated a contract with Freudenberg Europe, which affected his compensation when he moved to FNGP. During the dates in question, Prince was also making approximately $110,000.

Bazzi obtained a bachelor's degree in mechanical engineering from Wayne State University, as well as a master's degree in mechanical engineering. At the time that he worked with Plaintiff, Bazzi was earning $79,000. Bazzi, however, had negotiated a 14% pay increase because he received a competing offer and had threatened to leave the company. Bazzi also had multiple language skills and was regarded as being effective in building substantial relationships with higher-level contacts.

In addition to their superior experience and qualifications, the record shows that the male account managers were responsible for developing clients that produced tens of millions of dollars in revenue for FNGP. Prince, for instance, was responsible for managing the Ford account, which generated $20 million in sales for FNGP. Plaintiff, in comparison, had little or no prior sales experience when she assumed account-manager functions in 2009. Morever, her accounts generated significantly less revenue for FNGP and required significantly less skill to manage than the accounts handled by the male account managers. Indeed, FNGP assigned Plaintiff accounts that it regarded as insignificant and on which she could not harm the company if she made mistakes.

Plaintiff complained about her salary on several occasions and she generally received substantial raises in response. Altogether, FNGP increased Plaintiff's salary by 36% between the date of her hire in 2004 and the date of her voluntary resignation in 2010. In fact during 2008 and 2009, when the national financial downturn hit the automotive industry particularly hard, Plaintiff

received significant increases in her salary when many FNGP employees, including her male comparators, had their salaries frozen or, in some cases, reduced. Hawkins Dep. Rec. Pg. ID 253 (testifying that Plaintiff received the "lion's share" of the pay increases during this time).

The district court ruled that FNGP was entitled to summary judgment on all of Plaintiff's claims. With regard to her EPA claim, the district court stated that in order to establish a prima facie case of wage discrimination, Plaintiff had the burden to produce "specific evidence" of her job duties and those of the male comparators in order to prove that she performed the same job as her male comparators. The district court ruled, however, that Plaintiff failed to meet this burden because her position did not require substantially similar skills or responsibilities as the positions of her male comparators as to either the account-manager position or the applications-engineer position.

As to the account-manager position, the district court noted that the duties of the male comparators required building relationships with high-level-decision makers, skills in high-stakes negotiations and sales pitches, and managing accounts worth tens of millions of dollars in revenue. In comparison, the district court noted that, assuming Plaintiff was an account manager, her duties mainly involved collecting outstanding bills and altering product designs to increase sales. The district court also noted that Plaintiff's accounts were small and inactive and involved contacts with low-level employees with little decision-making authority. The district court concluded, therefore, that the two positions were not substantially equal because the positions of the male comparators required more skill, experience, and responsibility than Plaintiff's position.

As to the applications-engineer position, the court determined that the jobs of the male comparators required more skill than Plaintiff's position. The court noted that under applicable regulations "skill" includes factors such as "experience, training, education, and ability." The

district court concluded that Plaintiff could not establish that she performed work equal to the male comparators because they had more experience and, in some cases, possessed credentials that Plaintiff did not have.

The district court concluded further that even if Plaintiff could establish a prima facie case of wage discrimination under the EPA, FNGP had established as matter of law that the pay differential was "due to a factor other than sex." Specifically, the district court held that FNGP had proven that the wage differential was based on experience, education, expertise, prior salary, negotiations, market value, and the need to attract well-qualified candidates. Thus, the district court determined that FNGP was entitled to summary judgment on this affirmative defense. The same reasoning supported the district court's decision to grant summary judgment to FNGP on Plaintiff's Title VII and ELCRA wage-discrimination claims.

Plaintiff filed a timely notice of appeal from the district court's judgment. Additionally, the United States Equal Employment Opportunity Commission has filed an *amicus* brief urging us to reverse the district court's judgment.

II.

We review a district court's grant of summary judgment *de novo. Discount Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509, 521 (6th Cir. 2012). Courts may grant summary judgment only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When analyzing a motion for summary judgment, we draw all reasonable inferences in favor of the non-moving party and construe all evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, a mere "scintilla" of

evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)

III.

To establish a prima facie case of wage discrimination under the EPA, the plaintiff must show that the employer paid employees of the opposite sex different wages for equal work or for jobs the performance of which requires equal skill, effort, and responsibility or are performed under similar working conditions. *Beck-Wilson v. Principi*, 441 F.3d 353, 359 (6th Cir. 2006). The two jobs need not be identical, but rather only "substantially equal." *Id.* at 359. Whether jobs are substantially equal for purposes of the EPA is determined on a case-by-case basis and "resolved by an overall comparison of the work, not its individual segments." *Odomes v. Nucare, Inc.*, 653 F.2d 246, 250 (6th Cir.1981). Proving a violation of the EPA does not require proof of intent to discriminate. *Beck-Wilson*, 441 F.3d at 360.

If the plaintiff establishes a prima facie case of wage discrimination, the employer has an opportunity to prove that the pay differential is due to one or more of four statutory affirmative defenses: "(1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex." *Buntin v. Breathitt County Bd. of Educ.*, 134 F.3d 796, 799 (6th Cir.1998). An employer is entitled to summary judgment on one of the affirmative defenses "only if the record shows that they established the defense so clearly that no rational jury could have found to the contrary." *Id.* at 800 (quoting *Equal Employment Opportunity Comm'n v. State of Delaware Dep't of Health & Soc. Servs.*, 865 F.2d 1408, 1414 (3d Cir. 1989)).

8

If the employer proves one of the affirmative defenses, the plaintiff has a burden of production to demonstrate that the reasons for the pay differential are pretexual. *Balmer v. HCA, Inc.*, 423 F.3d 606, 613 (6th Cir. 2005), *abrogated on other grounds by Fox v. Vice*, 131 S. Ct. 2205 (2011). If the employer proves one of the EPA affirmative defenses it will also be entitled to judgment on a Title VII wage-discrimination claim. *Beck-Wilson*, 441 F.3d at 369.

Plaintiff and the EEOC both argue that the district court erred in holding that in order to establish a prima facie case of wage discrimination under the EPA, she had to produce "specific evidence" of her job duties when she was only required to produce evidence of substantial equivalence of the comparative jobs. Plaintiff also contends that the district court erred in assessing the qualifications of the male comparators at the prima facie case stage when the focus at that point is on the comparative job duties. As to FNGP's affirmative defense, Plaintiff concedes that differences in skills, education, and expertise can be legitimate bases for a wage differential, but she argues that FNGP bears the additional burden of justifying the "enormous" disparity between her pay and the pay of the male comparators.

Plaintiff and the EEOC also argue that FNGP failed to prove its affirmative defense. They contend that FNGP has only asserted that skill, education, and experience were the bases for the pay differential without any evidence that the differential was actually based on those considerations. In other words, Plaintiff and the EEOC essentially argue that, similar to a Title VII employer, FNGP has done no more than meet a burden of production to assert a legitimate non-discriminatory reason for the pay differential which is insufficient to prevail on its affirmative defense. Plaintiff argues further that she produced sufficient evidence of pretext to withstand the motion for summary judgment and to present her EPA claim to a jury.

9

Assuming, without deciding, that the district court erred in holding that Plaintiff had to produce "specific evidence" of her job duties and that she failed to establish a prima facie case of wage discrimination, we conclude that the district court correctly granted summary judgment on FNGP's affirmative defense. Stated another way, no reasonable juror could find that Plaintiff's sex played any role in the disparity between her salary and the salaries of her male comparators.

We find that the record convincingly shows that the wage differential as to both positions was because Plaintiff lacked the skill, experience, and qualifications of her male counterparts. Additionally, in some instances, the male comparators had greater job responsibilities than Plaintiff. This is particularly true with respect to the account-manager position, where the record is abundantly clear that FNGP assigned Plaintiff small, unimportant accounts on which she could gain experience without doing any significant harm to the company if she made mistakes. In contrast, the male account managers had vastly more account-manager experience than Plaintiff and their accounts were significantly more important to the financial success of the company than were Plaintiff's accounts. Moreover, the level of skill the male account managers needed to successfully handle their clients was substantially greater than the skill Plaintiff needed to manage her accounts.[3]

---

[3] In that regard, Plaintiff argues that FNGP paid Dean Biondi $40,000 per year more than her to manage the same account, Chrysler. The record shows, however, that the status of Chrysler had changed when FNGP hired Biondi to manage Chrysler. When Plaintiff managed the account, Chrysler was in bankruptcy and was not viewed by FNGP as an important client. When Fiat bought Chrysler, however, the outlook changed and FNGP regarded Chrysler as a significant business opportunity. Moreover, Biondi had significant prior experience developing new business with Chrysler for another company and had established important contacts throughout the Chrysler organization. In other words, the skills, experience, and responsibilities associated with managing Chrysler were greater when FNGP assigned the account to Biondi than when Plaintiff managed the account.

10

We disagree with Plaintiff and the EEOC that FNGP asserted, but failed to prove, that the differential in pay was based on the skill, experience, and responsibilities of the male comparators. The record shows that FNGP's explanations for the pay differential are based on the personal knowledge of witnesses familiar with the job duties of the respective positions and the qualifications of the individuals performing in these positions. Thus, the argument that FNGP failed to prove its affirmative defense with supporting evidence is not correct.

Plaintiff concedes, as does the EEOC, that differences in skill, experience, credentials, etc., are legitimate reasons for differentials in pay, but they essentially argue that these differences are legitimate only up to a point and that the employer must justify any excess. This proposition, however, is without any support in our controlling case law. Pay differentials based on experience, overall qualifications, and skill levels are legitimate "factors other than sex." *Balmer*, 423 F.3d at 612. *Vehar v. Cole Nat'l Group, Inc.*, 251 F. App'x 993 (6th Cir. 2007), while not controlling, is nevertheless distinguishable on the facts. There, the court held that the employer was not entitled to summary judgment based on its defense that differences in work experience and skills justified the pay differential between the plaintiff and the male comparators. *Id.* at 1000. In that case, however, the plaintiff's experience was "roughly equal" to the male employees' experience and her educational background was superior to theirs. *Id.* at 1000-01. Thus, the Court concluded that the differences were not "significant enough to support summary judgment[.]" *Id.* at 1000. In this case, however, the differences in skill and experience, and in some instances, education, between Plaintiff

11

and her male comparators truly are significant -- significant enough, we find, that granting summary judgment in FNGP's favor was appropriate.[4]

Finally, the evidence of pretext Plaintiff advances is weak and does not create a genuine issue of fact as to whether the pay differential was because of her sex. She cites two general categories of evidence on pretext: 1) several gender-based comments made by her supervisor, FNGP's North American sales manager Thomas Ramm; and 2) instances where the president of FNGP, Dr. Mehdi Ilkhani-Pour, allegedly treated her as an administrative assistant by requiring her to perform menial tasks such as getting coffee and organizing birthday parties. We observe, however, that according to Plaintiff's deposition, these incidents occurred after she allegedly was promoted to account manager. As we have already explained, the qualifications and job responsibilities of the male account manager far exceeded Plaintiff's qualifications and the job responsibilities associated with her accounts. The gulf between Plaintiff and the male account managers was so great that no rational jury could conclude that the comments and incidents Plaintiff cites as prextext indicate that the pay differential was based on Plaintiff's sex.

---

[4]During oral argument, Plaintiff cited *Finch v. Xavier Univ.*, 689 F. Supp. 2d 955 (S.D. Ohio 2010), for the proposition that a jury question is created when an employer justifies a substantial pay differential on the grounds of education and experience. In *Finch,* a university paid a male chair of a department approximately $30,000 more than it had previously paid the female plaintiffs to chair the same department. The university had traditionally paid only a $3,000 stipend to chair the department. The university asserted that the pay difference was justified by the male chair's education and professional background. The district court stated in part, that "a reasonable juror could question whether [the male's] education and professional background was that much more valuable than Plaintiffs' background to justify that substantial differential in pay." *Id.* at 968. *Finch*, however, is not binding and, in any event, that statement is dicta because the district court had previously ruled that the university had failed to support its justification for the pay differential with admissible evidence. *See id.*

Moreover, the fact that Plaintiff received the "lion's share" of the pay raises during the relevant time period, when almost every other employee's salary was frozen, and in some cases reduced, significantly diminishes any inference that her gender played any part in the pay differential. *Cf. Ambrose v. Summit Polymers, Inc.*, 172 F. App'x 103, 109 (6th Cir. 2006) (holding that a reasonable jury could not find that differences in annual pay raises were based on sex where plaintiff's raises as a percentage equaled or exceeded the raises of a majority of the male comparators). The district court, therefore, correctly concluded that FNGP proved its affirmative defense.

Since the district court correctly determined that FNGP was entitled to summary judgment on its EPA affirmative defense, it also correctly ruled that FNGP was entitled to summary judgment on Plaintiff's Title VII and ELCRA wage-discrimination claims. *See Beck-Wilson*, 441 F.3d at 369; *Conti v. American Axle & Mfg., Inc.*, 326 F. App'x. 900, 908 (6th Cir. 2009) (stating that federal evidentiary standards apply to ELCRA discrimination claims).

The judgment of the district court is AFFIRMED.

13